## Case No. 3,461.

### CULBERTSON v. ELLIS et al.

[6 McLean, 248.] [1]

Circuit Court, D. Indiana. Nov. Term, 1853.

FORFEITURE OF CONTRACT—ACTION FOR DAMAGES —PLEADING AND PROOF—FALSE ARREST.

1. Where, in a contract for the construction of a public work, the contractor undertakes to complete it by a specified time, and it contains a clause authorizing the engineer, if at any time he has reason to believe the work will not be so completed, to declare a forfeiture of the contract, and the engineer in good faith annuls it, and such annulment is confirmed by the directors of the company, no liability to the contractor is thereby incurred on the part of the engineer or the directors, though it should subsequently appear that the contractor was not in default, and that the forfeiture was declared under a mistaken view of the facts.

2. But the declaration of forfeiture, in such case, will not prevent the contractor from recovering the amount due him on the contract at the time of forfeiture.

3. If the declaration avers, as the foundation of the claim for damages, that the forfeiture was wrongfully and maliciously declared by the engineer, and affirmed from like motives by the

[1] [Reported by Hon. John McLean, Circuit Justice.]

defendants, then being directors of the company, the plaintiff must prove facts from which the inference of bad motives may be drawn.

4. Proof that some of the defendants had expressed the opinion, prior to the forfeiture, that it would result in a large saving to the company, is not a sufficient ground for inferring corrupt motives, in the absence of other facts showing that such motives were the influential cause of their acts.

5. If, from the evidence, there are reasonable grounds for the inference that the plaintiff, by retaining the contract, would have been a loser by it, or would have made no profit, the forfeiture, though declared or assented to from wrong motives, will not entitle him to damages.

6. If the evidence justifies the conclusion that the plaintiff would not have finished the work within the contract time, had no forfeiture been declared, as the contract would then have been terminated, and the plaintiff, by its terms, would have been liable to a deduction of one-sixth upon the whole of the work performed, he cannot recover for any alleged injury from the forfeiture.

7. The allegation of a malicious arrest of the plaintiff's person, on a warrant of the peace sued out by one of the defendants, not being set forth as a distinct cause of action, is not a proper basis for a verdict against the defendants; but, if the averment of malicious motives in the forfeiture, and the assent given to it, is sufficiently proved, the malicious arrest may be considered in aggravation of damages.

8. If the jury are satisfied that, in the prior suit brought by the plaintiff against the Wabash Navigation Company [Case No. 3,464], the jury took into consideration and included in their verdict, the loss which they supposed the plaintiff had suffered by the forfeiture, he cannot recover any thing in this action for such loss, even if the jury should conclude from the testimony that there was an actual loss to him.

[This was an action by Samuel Culbertson against Abner T. Ellis and others to recover for damages sustained by reason of the forfeiture of a contract.]

Kilgore & Smith, for plaintiff.

Judah, Crawford & Crittenden, for defendants.

LEAVITT, District Judge. This is a special action on the case, brought for the recovery of damages, on grounds set forth in the plaintiff's declaration, and which will be indicated with sufficient clearness by the following brief statement: A company had been incorporated by the legislatures of the states of Indiana and Illinois, by the name of the Wabash Navigation Company, for the improvement of the navigation of the Wabash river at the Grand Rapids, by means of a crib lock and dam. On the 21st of August, 1847, the president and directors of said company entered into a written contract with the plaintiff, and one Isaac Culbertson, since deceased, by which the Culbertsons agreed to construct the lock and dam, in the manner and upon the conditions specifically stated in said contract. One of the conditions was, that the work should be completed by the first of November, 1848, with a clause to the effect that if the work was not prosecuted with the force and diligence necessary to ensure its completion by the time stated in the contract, it should be competent for the engineer of the company to declare it forfeited, and take possession of the work in behalf of the company. It was also agreed, in case the Culbertsons failed to complete the lock and dam within the contract time, they were to be subject to a deduction of one-sixth of the amount of the work done by them. Soon after the execution of the contract, the Culbertsons procured tools, implements and other property, and commenced the execution of the work, and continued their operations during the autumn of 1847, and the summer of 1848; and, on the 2d of September, in the last named year, the engineer declared the contract to be forfeited, and the company took possession of the work and carried it on to its completion.

The averments in the declaration are, in the substance, that the plaintiff had faithfully performed his part of the contract, up to the time of the forfeiture, having made all the progress therein that was practicable, and was then engaged on the work in the vigorous prosecution of the same; that the engineer, at the instance of the defendants, wrongfully and without any sufficient reasons, declared the contract to be forfeited; and that the defendants, being at the time directors in said company, corruptly conspiring together to injure the plaintiff, wrongfully and maliciously urged the engineer to declare the forfeiture, and with the same purpose and motive affirmed the act of the engineer, and wrongfully took possession of the tools, implements and other property of the plaintiff; and as a means to accomplish their unlawful purpose, maliciously filed a false affidavit that they were in fear of personal injury and violence by the plaintiff, and on the 7th of September, 1848, sued out a warrant of the peace against him, and procured him to be arrested and held in custody thereon. The plaintiff claims damages for the loss, which he alleges he sustained by reason of the forfeiture of the contract, and the illegal proceedings of the defendants in getting possession of his property and arresting and imprisoning his person. The defendants plead, first, not guilty, thereby putting in issue all the allegations in the plaintiff's declaration; and secondly, that the plaintiff, in a prior suit against the Wabash Navigation Company, tried in this court, obtained a verdict and recovered judgment for nearly ten thousand dollars, in which was included his claim for the injury sustained by him arising from the annulment of the contract. [Culbertson v. Wabash Nav. Co., Case No. 3,464.]

It is not deemed necessary, in committing this case to the jury, to re-state, or minutely analyze, the great mass of evidence which has been introduced on this protracted trial. It will be my purpose to bring to the notice of the jury, with as much brevity as possi-

ble, the legal principles involved, and leave them in the discharge of their rightful duties —to apply these principles to the facts before them.

Upon the first issue made by the parties, two principal enquiries arise: First, whether, in the forfeiture of the contract by the engineer, the affirmation of that forfeiture by the defendants, and the acts consequent thereon, the defendants were influenced by the malicious or improper motives imputed to them by the plaintiff; and, secondly, whether the forfeiture resulted to the injury of the plaintiff, by depriving him of profit which otherwise would have enured to him from the fulfilment of the contract. In relation to the first of these enquiries, it will be noticed by the jury, as a fact not controverted in the case, that the contract between these parties contains an explicit provision to the effect, that in case the Culbertsons shall not prosecute the work in such a way as to ensure its completion within the time stated, the engineer may declare it forfeited, and take possession of the unfinished work in behalf of the company. It is not pretended that any fraud or undue means were used, to induce the plaintiff to become a party to this contract. It was voluntary on his part. The clause of forfeiture is one usually inserted in contracts for the construction of important public works, and is obligatory on the parties to it, not being against law, or condemned by any principle of public policy. For the purpose indicated by this clause in the contract between the parties, they constitute the engineer their mutual agent, and are bound by his decision, if made in good faith. It has been held by the supreme court of the United States, in reference to a clause of forfeiture in a contract similar to this, that if the engineer declares a forfeiture under the belief that the contractor was not prosecuting his work with proper diligence and energy, and an apprehension that the work would not be completed within the contract time, damages are not recoverable for the forfeiture, though it should appear that the contractor was not in default, and that the engineer acted under a mistaken view of his conduct. [Philadephia, W. & B. R. Co. v. Howard] 13 How. [54 U. S.] 307. This principle is, however, stated by the court, with the limitation, that the forfeiture shall not deprive the contractor of what was previously earned by or due to him under the contract.

As the result of this doctrine, thus settled by the supreme court, it will be observed, the plaintiff in this action has no legal claim for damages arising from the act of forfeiture, unless the engineer, with the knowledge and approbation of the defendants, and from corrupt and malicious motives, annulled the contract, and the act of annulment, from like motives, was sustained and affirmed by the defendants. The motives of the engineer and defendants, in this transaction, are proper for the consideration of the jury; and these can only be inferred from their acts, as adduced in evidence. If there was reasonable or probable cause for the declaration of forfeiture, it affords at least a prima facie presumption that it was done in good faith, and without any improper motive. In the consideration of this subject, it will be the duty of the jury to scrutinize the evidence, and decide according to the light which it affords. The work which the plaintiff contracted to perform, was one of very considerable magnitude; and it was obviously important to the company of which the defendants were the representatives, as well as to the public, that it should be completed within the time stated in the contract. The work, while in progress and in an unfinished state, would be a hindrance to the navigation of the Wabash river, in those stages of water when it could be used for that purpose; and if unnecessarily protracted, would subject the company to damages for its obstruction. Hence the propriety and necessity of the clause of forfeiture in the contract, to secure the prompt and timely completion of the work. The contract, as already stated, was dated in August, 1847, and the locks and dams were to be completed by the first of November, in the following year. The declaration of forfeiture was made the second of September; leaving but two months from that date, for the completion of the work. The testimony of a number of witnesses is before the jury, touching the manner in which the work had been prosecuted, prior to the forfeiture, and the amount of work then to be done. It also appears, that the season of 1848 was not favorable to the prosecution of the work, owing to the occurrence of frequent floods in the river, and to the sickness of both the Culbertsons, resulting in the death of one of them. I do not propose to advert specially to the testimony on these points. The engineer who superintended the work from its commencement, and by whom the forfeiture was declared, has been very closely examined on all the points involved in this controversy. He is wholly unimpeached as a witness, and appears to be a gentleman of great intelligence and candor. It will be for the jury to decide what weight shall be given to his testimony. He has stated very clearly the progress of the work, up to the time of the forfeiture, and what then remained to be done. With a full knowledge of all the facts, he gives it as his opinion, there was not even a remote probability, that the work would be completed by the first of November; and that under this conviction, and wholly uninfluenced by the defendants or others, and solely on his own responsiblity, he declared the annulment of the contract. It moreover appears from his testimony, that so far from any act being done to obstruct the progress of the work, he and the defendants evinced the greatest anxiety for its rapid advancement, and its completion by the plaintiff within the contract time. And to this end, it ap-

pears the board of directors, during the summer of 1848, passed several resolutions of a conciliatory character, enjoining upon the plaintiff to apply more force to the work, and prosecute it with greater energy.

Some testimony has been introduced by the plaintiff, proving that some of the defendants, on different occasions, and to different persons, expressed the opinion that by annulling the contract, a considerable saving would result to the company; and it is insisted in behalf of the plaintiff, that this was the motive in declaring the forfeiture. If such an inference is fairly sustainable, the jury will be fully justified in finding the allegation of evil motive, as alleged in the declaration, to be true, and returning a verdict accordingly. If a wrong has been committed in this transaction, with the low and mercenary design of benefiting the company, it affords a fair implication that the annulment was wrongful and malicious, and the plaintiff is well entitled to recover the full amount of any injury which he has thereby sustained. The jury, however, must be satisfied beyond a fair doubt, that the defendants were actuated by a motive so dishonorable and fraudulent. And they will not be justified in such a presumption, by the fact, that some of the defendants expressed an opinion that the forfeiture would result in a saving to the company. Such an opinion may have been entertained, without presuming that it necessarily induced the act of forfeiture. Indeed, such an inference is in direct contradiction to the testimony of the engineer, who, as before stated, testifies that he declared the forfeiture from a conviction of duty, and on his sole responsibility. He also swears, that in his judgment, no saving would accrue to the company by the annulment of the contract.

In no aspect of this case, can the plaintiff's alleged loss from the forfeiture of the contract, be taken into consideration by the jury, in estimating damages, if they are satisfied that by retaining the work he would have realized no profit, or that there would have been an actual loss. Some of the witnesses for the plaintiff express the opinion, that the plaintiff would have made some profit on his contract, if he had been permitted to complete it. Others, among whom is the engineer, having an accurate knowledge of all the facts necessary to a correct judgment on this point, say the plaintiff would have lost money by holding on to the contract, and completing the work. It will be for the jury to decide, as to the preponderance of the testimony relating to this point of the case. Whether, on the supposition of a loss to the plaintiff from the forfeiture, he is not barred from recovering it in this action, by his recovery in the prior suit, will be a proper subject of inquiry, in considering the second plea of the defendants.

With reference to the question of loss or profit by the plaintiff, if the contract had not been annulled, there is evidence which is entitled to the consideration of the jury, proving that the plaintiff had no hope or expectation of completing the work, within the contract time. By the terms of the contract, in the event of a failure to finish the work according to its requirements, he was subject to a deduction of one sixth upon the entire value of the work done; and his profit, if any, would be reduced by this amount. And moreover, without question, failing to complete the work by the first of November, 1848, the contract would then be at an end, and the work pass into the company's hands. These suggestions are submitted to the jury, to aid them in coming to a just conclusion in reference to the probabilities of profit to the plaintiff, if the contract had not been annulled.

With reference to the issue on which the jury are to pass in this case, it is perhaps not necessary to decide, whether the sickness of the plaintiff and his brother, during the summer of 1848, and the prevalence of high water in the Wabash, during that season, which may have retarded the progress of the work, would have afforded a legal excuse for not completing it, within the contract time, if there had been no annulment of the contract. These contingencies were not provided for, in the clause of forfeiture, and did not affect the right of the engineer to annul the contract, if, without reference to these, the facts justified the act. In the posture in which this case is before the court and jury, the question is not, whether the plaintiff is excusable for not prosecuting the work with more diligence and energy, but whether the plaintiff's allegations of malicious motives in the forfeiture, are sustained by the evidence.

As to the arrest and imprisonment of the plaintiff, on a warrant of the peace, issued at the instance of one of the defendants, with the alleged malicious purpose of compelling a transfer or sale of the plaintiff's tools, implements, etc., to the company, which, it is insisted by counsel, is of itself a sufficient ground to justify a verdict of damages in this action: it will be noticed, that it is not set forth in the declaration as a distinct and substantive cause of action. It is stated, as one of a series of acts showing the malicious purpose of the defendants in the entire transaction. Isolated from the other facts of the case, it can not constitute a legal basis for a general verdict against the defendants; but, if the jury believe the main fact charged, namely, that the defendants maliciously procured the declaration of forfeiture and subsequently affirmed the act, and that the arrest and imprisonment of the plaintiff were without probable cause, and with a bad purpose, the latter facts may properly be taken into consideration in aggravation of damages.

The views of the court on the plea of former recovery, interposed by the defend-

ants, will now be briefly stated. As before noticed, it is insisted by counsel that the jury may include in their verdict the prospective profit of the plaintiff, on his contract with the company, if there had been no annulment, even if the jury in the former suit estimated such profit in their verdict. The court, on this point, has no hesitancy in saying, if the jury are satisfied the supposed profit on the contract was taken into consideration by the former jury, and was included in their verdict, it can not be embraced in the verdict to be returned in this case. It is a plain principle of law, and an obvious dictate of justice, that a party shall not have two recoveries for the same cause of action. The former action, as appears from the record, was in debt, against the Wabash Navigation Company, and the amount recovered was nearly ten thousand dollars. Three of the jurors in that case testify that their recollection is distinct,—that the prospective profit of the plaintiff on his contract with the company was included in their verdict. In addition to this, it is proved by two gentlemen who were of counsel in that case, on opposite sides, that this claim was insisted on in argument to the jury; and they have no doubt, from the amount of the verdict, that it was considered and allowed by them. This evidence would seem to be satisfactory on this point. But the present action against the defendants as individuals, is not barred by the recovery in the former action. If the jury find that the acts charged in the declaration are proved, and were done with the malicious motives imputed to them, it will be competent for them to return a verdict for such damages as they may deem just, excluding from their computation the amount of any supposed loss to the plaintiff, from the forfeiture of the contract.